Aaron K. McClellan (State Bar No. 197185)
AMcClellan@mpbf.com
Christopher R. Ulrich (State Bar No. 271288)
CUlrich@mpbf.com
John P. Girarde (State Bar No. 191518)
JGirarde@mpbf.com
**Murphy, Pearson, Bradley & Feeney**
580 California Street, Suite 1100
San Francisco, CA 94104-1001
Tel: (415) 788-1900

Christopher J. Seusing *(Pro Hac Vice)*
cseusing@wshblaw.com
**Wood, Smith, Henning & Berman LLP**
685 3rd Avenue, 18th Floor
New York, NY 10017
Tel: 475-755-7050

Jacob P. Wilson (State Bar No. 331448)
jwilson@wshblaw.com
**Wood, Smith, Henning & Berman LLP**
10960 Wilshire Boulevard, 18th Floor,
Los Angeles, CA 90024
Tel: 310-481-7702

***Attorneys for Defendant***
***BRIGHT HEART HEALTH, INC.***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

S. N., individually and on behalf of all others similarly situated,

Plaintiff,

v.

BRIGHT HEART HEALTH, INC. d/b/a BRIGHT HEART HEALTH, a California Professional Corporation,

Defendant.

Case No.: 3:24-cv-02112-SI

**DEFENDANT BRIGHT HEART HEALTH, INC.'S NOTICE OF MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 18, 2024
Time: 10:00 a.m.
Courtroom: 1
Honorable: Susan Illston

*[Filed Concurrently with Declaration of Jonathan Ciampi in Support of Motion]*

**PLEASE TAKE NOTICE** that on October 18, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at San Francisco Courthouse, Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant, Bright Heart Health Inc. d/b/a Bright Heart Health ("Bright Heart") will, and hereby does, move this Court for an order dismissing Plaintiff, S.N.'s ("Plaintiff") Class Action Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failing to plead facts sufficient to support her causes of action against Bright Heart. Alternatively, Bright Heart will, and hereby does move this Court for an order striking Plaintiff's class allegations pursuant Fed.R.Civ.P. 12(f) for failure to meet the requirements of Fed.R.Civ.P. 23(a) and (b). Alternatively, Bright Heart will, and hereby does move this Court for an order compelling arbitration on an individual basis pursuant to Fed.R.Civ.P. 12(b)(3) and 9 U.S.C. § 4. Bright Heart further requests all other relief as this Court deems just and equitable. The motion is made based on the attached memorandum of points and authorities, the Declaration of Jonathan Ciampi and accompanying exhibits, the record in this action, and such other argument and evidence as may be presented at the time of hearing.

Respectfully submitted,

DATED: August 15, 2024

**MURPHY, PEARSON, BRADLEY & FEENEY**

*/s/ Christopher R. Ulrich*
Christopher R. Ulrich
John P. Girarde
Aaron K. McClellan

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ Jacob P. Wilson*
Jacob P. Wilson
Christopher J. Seusing
*Pro Hac Vice*

.

Attorneys for Bright Heart Health Inc. d/b/a
Bright Heart Health

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. STATEMENT OF RELEVANT FACTS ........ 1

III. THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE 12(B)(6) AS PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF ........ 2

A. Plaintiff's claims are defeated by the statute of limitations ........ 3

B. Plaintiff's claims are legally deficient as they rely on outdated legal authority ........ 4

C. Plaintiff's negligence claim is legally deficient because it is brought outside the statute of limitations, and Plaintiff fails to allege duty and damages ........ 5

1. Bright Heart owed Plaintiff no duty ........ 6

2. Plaintiff has not alleged sufficient damages. ........ 8

D. Plaintiff's breach of confidence claim is legally deficient because it is brought outside the statute of limitations, and her personal information is not novel ........ 9

E. Plaintiff's unjust enrichment claims is legally deficient because she fails to allege that she has an inadequate remedy at law ........ 10

F. Plaintiff's ECPA claim is legally deficient because Bright Heart was a party to the alleged communications ........ 11

G. Plaintiff's CIPA claim is legally deficient because it is premised on the same legal standard as ECPA ........ 13

H. Plaintiff's CMIA claim is legally deficient because it is entirely speculative and such cause of action is only available to California Residents ........ 14

I. Plaintiff's UCL claim is legally deficient because the alleged misconduct did not occur in California and Plaintiff fails to allege that she has an inadequate remedy ........ 16

J. Plaintiff's California Constitutional Invasion of Privacy and common law intrusion upon seclusion claims are legally deficient because she does not specifically allege what personal information was allegedly shared and such cause of action is only available to California residents ........ 19

K. Plaintiff's CLRA claim is legally deficient because she failed to provide statutory notice and such cause of action is only available to California residents ........ 21

L. Plaintiff's larceny and receipt of stolen property claim is legally deficient because there is no trespassory taking ........ 22

M. Plaintiff's breach of fiduciary claim is legally deficient because no fiduciary relationship existed ........ 24

N. Plaintiff's violation of the Ohio data breach statute claim is legally deficient because the statute does not contain a private right of action ........ 25

O. Plaintiff's violation of OCSPA claim is legally deficient because it fails to satisfy the "substantially similar" requirement ..... 26

IV. THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO RULE 12(f) BECAUSE PLAINTIFF IS UNABLE TO MEET THE REQUIREMENTS OF RULE 23 ..... 27

V. THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO 12(B)(3) BECAUSE A VALID AND ENFORCEABLE ARBITRATION AGREEMENT EXISTS ..... 30

A. The Terms of Use contains an Arbitration Agreement ..... 30

B. The Terms of Use is valid and enforceable ..... 31

C. The Arbitration Agreement is governed by the FAA ..... 33

D. The Arbitration Agreement encompasses Plaintiff's claims ..... 34

VI. CONCLUSION ..... 35

## TABLE OF AUTHORITIES

**CASE** **PAGE**

*AdTrader, Inc. v. Google LLC,*
No. 17-CV-07082-BLF, 2020 WL 1922579 (N.D. Cal. Mar. 24, 2020) .............................. 30

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)........................................................................................................ 34

*Am. Hosp. Ass'n v. Becerra,*
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ................................ 5,6

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 2,3

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015).......................................................................................... 10

*Austin v. Atlina*,
No. 20-CV-6363-YGR, 2021 WL 6200679 (N.D. Cal. Dec. 22, 2021) ............................... 6

*Barrett v. Apple Inc*.,
No. 5:20-CV-04812-EJD, 2022 WL 2119131 (N.D. Cal. June 13, 2022),
reconsideration denied, No. 20-CV-04812-EJD, 2023 WL 3977633
(N.D. Cal. June 13, 2023) .............................................................................................. 23

*Basaloco-Lapo v. United States,*
No. 89-15348, 1991 WL 172381 (9th Cir. Sept. 4, 1991) .................................................. 7

*Be In, Inc. v. Google Inc.,*
2013 WL 5568706 (N.D. Cal., Oct. 9, 2013, No. 12-CV-03373-LHK). ............................. 32

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... *passim*

*Berkla v. Corel Corp.,*
302 F.3d 909 (9th Cir. 2002)............................................................................................ 9

*Bernson v. Browning–Ferris Indus. of California, Inc.,*
7 Cal.4th 926, 931, 30 Cal.Rptr.2d 440, 873 P.2d 613 (1994). ........................................... 3

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024),
on reconsideration in part, No. EDCV 23-2092 JGB (DTBX),
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ........................................................ *passim*

*Boegeman v. Smith*, No. 3:17-cv-00861,
2018 WL 3140469 (S.D. Cal. June 27, 2018) ........ 23

*Brennan v. Opus Bank,*
796 F.3d 1125 (9th Cir. 2015) ........ 35

*Brown v. USA Taekwondo*,
11 Cal. 5th 204, 276 Cal.Rptr.3d 434, 483 P.3d 159 (2021) ........ 7

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ........ 34

*Cain v. State Farm Mut. Auto. Ins. Co.,*
62 Cal. App. 3d 310 (Ct. App. 1976) ........ 20

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
No. 04–04825, 2005 WL 756610 (N.D.Cal. Apr. 1, 2005) ........ 32

*Castaldi v. Signature Retail Servs., Inc.,*
No. 15-CV-00737-JSC, 2016 WL 7042991 (N.D. Cal. Jan. 20, 2016) ........ 35

*Castillo v. Seagate Technology, LLC*,
16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........ 8

*Churchill Vill., L.L.C. v. Gen. Elec. Co*.,
169 F. Supp. 2d 1119 (N.D. Cal. 2000), aff'd sub nom.
*Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566 (9th Cir. 2004) ........ 16

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,*
43 Cal. 4th 375, 181 P.3d 142 (2008) ........ 25

*Cleveland v. Johnson*,
209 Cal. App. 4th 1315, 147 Cal. Rptr. 3d 772 (2012) ........ 24.

*C.M. v. MarinHealth Medical Group, Inc.,*
CV-04179-WHO, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ........ 8

*Cousin v. Sharp Healthcare,*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ *passim*

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ........ 34

*Delta Sav. Bank v. United States*,
265 F.3d 1017 (9th Cir. 2001) ........ 6

*Desert Care Network,*

2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)........................................................................ *passim*

*Dfinity USA Rsch. LLC v. Bravick*,
No. 22-CV-03732-EJD, 2023 WL 2717252 (N.D. Cal. Mar. 29, 2023)............................... 22

*Doe v. Davita Inc.*,
No. 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ..................... *passim*

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ............................ *passim*

*Doe v. Meta Platforms, Inc.*,
No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ............................ *passim*

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ..................................................................... 15

*Doe I v. Google LLC*,
No. 23-CV-02431-VC, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023)................................ 11,12

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350, 108 Cal.Rptr.3d 682 (2010).......................................................... 10

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..................................................................... *passim*

*Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008)...................................................................................... 3

*Enter. Research Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir.1997)........................................................................................ 9

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016)...................................................................................... 10

*Esparza v. Gen Digital Inc.*,
No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024)......................... 20

*Faris v. Enberg*,
158 Cal. Rptr. 704 (Cal. Ct. App. 1979) ...................................................................... 9

*Formic Ventures LLC v. SomaLogic, Inc.*,
No. 23-CV-02660-VC, 2023 WL 6037899 (N.D. Cal. Sept. 15, 2023) .............................. 23

*Foster v. Health Recovery Servs., Inc.*,
493 F. Supp. 3d 622, 637 (S.D. Ohio 2020)................................................................... 27

*Friedman v. DirecTV*,

262 F. Supp. 3d 1000 (C.D. Cal. 2015)........................................................................ 9

*Hart v. TWC Prod. & Tech. LLC,*
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........................................................................ 19

*Heck v. Amazon.com, Inc.,*
No. 2:23-CV-01219-JHC, 2024 WL 248712 (W.D. Wash. Jan. 23, 2024) .......................... 22

*Heerde v. Learfield Commc'ns, LLC,*
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024) ............ 29

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063 (2009) ............................................... 20

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012)........................................................................................ 3

*Hopkins & Carley, ALC v. Thomson Elite*,
No. 10-CV-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011)............................... 35

*Hudson v. Foster*,
68 Cal. App. 5th 640, 283 Cal. Rptr. 3d 822 (2021)........................................................... 24

*Huynh v. Quora*, Inc.,
508 F. Supp. 3d 633 (N.D. Cal. 2020) ............................................................................ 8

*Gerstle v. Am. Honda Motor Co., Inc.*,
2017 WL 2797810, at *10, n. 17 (N.D. Cal. June 28, 2017) ............................................... 26

*Gross v. Symantec Corp*.,
No. CV 12–00154 CRB, 2012 WL 3116158 (N.D.Cal. July 31, 2012) .............................. 17

*Gustafson v. BAC Home Loans Serv'g, LP,*
No. CV 11–915–JST (ANx), 2012 WL 4761733 (C.D.Cal. Apr. 12, 2012) ........................ 17

*In re Animation Workers Antitrust Litig.,*
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........................................................................ 3

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020)........................................................................................ 14

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) ............................................................................ 19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
806 F.3d 125 (3d Cir. 2015)........................................................................................ 14

*In re Google Location Hist. Litig.*,

428 F. Supp. 3d 185 (N.D. Cal. 2019) ........................................................................ 21

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........................................................................ 20

*In re iPhone 4S Consumer Litig.*,
No. C12–1127–CW, 2013 WL 3829653 (N.D.Cal. July 23, 2013)...................................... 21

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................ 13,14

*In re: Netgain Tech., LLC*,
No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606 (D. Minn. June 2, 2022)......................... 6

*In re Porsche Cars N.A., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012)......................................................................... 27

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig*.,
893 F.Supp.2d 1058 (D.Nev.2012) ............................................................................. 32

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975)..................................................................................... 28

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ............................. 10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................................................ 19,20

*Larry Pearl v. Coinbase Global, Inc*.,
No. 22-CV-03561-MMC, 2024 WL 3416505 (N.D. Cal. July 15, 2024)............................ 27

*Line One Lab'ys Inc. (USA) v. Wingpow Int'l Ltd.*,
No. CV 22-2401 FMO (EX), 2023 WL 6812760 (C.D. Cal. Sept. 12, 2023) ...................... 23

*Low v. LinkedIn Corp*.,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................... 20

*Luiz v. Queen of Angels Hospital*,
53 Cal. App. 2d 310, 127 P.2d 966 (Cal. Ct. App. 1942) .................................................. 7,25

*Lynwood Invs. CY Ltd. v. Konovalov*,
No. 20-CV-03778-LHK, 2021 WL 1198915 (N.D. Cal. Mar. 30, 2021) ............................ 3

*Lyon v. United States Immigr. & Customs Enf't*,
300 F.R.D. 628 (N.D. Cal. 2014) .............................................................................. 29

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,

No. 12-4457 SC, 2013 WL 791457 (N.D. Cal. Mar. 4, 2013)............................................ 13,21

*Moore v. Regents of University of California*,
51 Cal.3d 120, 271 Cal. Rptr. 146, 793 P.2d 479 (1990) .................................................... 7,25

*Morgan v. Imperial Irrigation Dist.*,
223 Cal. App. 4th 892 (2014)......................................................................................... 20

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.,*
No. CV 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)........................................... 9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)............................................................................................. 32

*Nienaber v. Overlake Hosp. Med. Ctr.,*
No. 2:23-CV-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ........................ 12

*Ngethpharat v. State Farm Mut. Ins. Co*.,
339 F.R.D. 154 (W.D. Wash. 2021) ................................................................................. 30

*Nguyen v. Barnes & Noble Inc.,*
763 F.3d 1171 (9th Cir. 2014)........................................................................................ 32,33

*Norwest Mortgage, Inc. v. Superior Court,*
72 Cal.App.4th 214, 85 Cal.Rptr.2d 18 (1999)............................................................... 16,17

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)............................................................................................ 32

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir) ...................................................................................................... 30

*O'Neal v. Stanislaus Cnty. Employees' Ret. Assn.,*
8 Cal. App. 5th 1184, 214 Cal. Rptr. 3d 591 (2017)......................................................... 24

*People v. Hartley*,
248 Cal. App. 4th 620, 203 Cal. Rptr. 3d 770 (2016)........................................................ 23

*Phillips v. Philip Morris Companies Inc.*,
290 F.R.D. 476 (N.D. Ohio 2013) .................................................................................... 27

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)........................................................................................... 12

*Pom Wonderful LLC v. Welch Foods, Inc.*,
2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) ................................................................... 18

*Poulos v. Caesars World, Inc.*,

379 F.3d 654 (9th Cir. 2004)........................................................................................ 30

*Quamina v. JustAnswer LLC,*
No. 22-CV-06051-JD, 2024 WL 950157 (N.D. Cal. Mar. 5, 2024) .................................... 31,32

*Quinalty v. FocusIT LLC*,
No. CV-23-00207-PHX-JJT, 2024 WL 342454 (D. Ariz. Jan. 30, 2024) ............................ 28

*R.C. v. Walgreen Co.,*
No. EDCV 23-1933 JGB (SPX), 2024 WL 2263395 (C.D. Cal. May 9, 2024)……..*passim*

*Rebecka Miller v. Plex, Inc.*,
Case No. 5:22-cv-5015-SVK, ECF No. 32 (N.D. Cal. March 30, 2023)............................ 35

*Richelle L. v. Roman Cath. Archbishop*,
106 Cal. App. 4th 257, 130 Cal. Rptr. 2d 601 (2003),
as modified (Mar. 17, 2003)............................................................................................ 24

*Riordan v. W. Digital Corp.,*
No. 5:21-CV-06074-EJD, 2023 WL 6462857 (N.D. Cal. Sept. 29, 2023) .......................... 10

*R.S. v. Prime Healthcare Servs., Inc.,*
No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024)................ 12

*Russo v. APL Marine Servs., Ltd.*,
694 F. App'x 585 (9th Cir. 2017) ...................................................................................... 20

*Ryan v. Microsoft Corp.,*
147 F. Supp. 3d 868 (N.D. Cal. 2015). ............................................................................. 4

*Santoro v. Tower Health,*
No. CV 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ......................................... 7,8

*Siry Investments, L.P. v. Farkhondehpour,*
13 Cal.5th 333 (2022) ...................................................................................................... 23

*Sonner v. Premier Nutrition Corp*.,
971 F.3d 834 (9th Cir. 2020)........................................................................................... 11,18

*Southland Corp. v. Keating*,
465 U.S. 1 (1984)............................................................................................................ 34

*Specht v. Netscape Commc'ns Corp.,*
306 F.3d 17 (2d Cir.2002)................................................................................................ 32

*Spokeo v. Robins,*
578 U.S. 330, 338 (2016)................................................................................................. 27

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191, 127 Cal.Rptr.3d 185, 254 P.3d 237 (2011) .............................................. 17

*Tamraz v. Bakotic Pathology Assocs., LLC*,
No. 22-CV-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ................... 19

*Tanner v. Acushnet Co.*,
No. 823CV00346HDVADSX, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023).................... 20

*Teeter v. Easterseals-Goodwill N. Rocky Mountain, Inc.*,
No. CV-22-96-GF-BMM, 2023 WL 2330241 (D. Mont. Mar. 2, 2023)............................. 6

*Tele-Count Eng'rs, Inc.v. Pac. Tel. & Tel. Co.*,
214 Cal. Rptr. 276 (Cal. Ct. App. 1985) ................................................................................ 9

*Terlesky v. Fifth Dimension, Inc.*,
No. 1:15-CV-374, 2015 WL 7254189 (S.D. Ohio Nov. 17, 2015)....................................... 27

*Thinkey Ink Info. Res., Inc. v. Sun Microsys., Inc.*,
368 F.3d 1053 (9th Cir. 2004).................................................................................................. 35

*Thompson v. California Brewing Co.*,
150 Cal. App. 2d 469 ............................................................................................................... 9

*Tourgeman v. Collins Fin. Servs., Inc*.,
No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011)....................... 30

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ............................................................................................................ 13,28

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)................................................................................................................. 28

*United States v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007).................................................................................................. 34

*Walsh v. Microsoft Corp.*,
63 F. Supp. 3d 1312 (W.D. Wash. 2014)................................................................................ 4

*Warden v. Kahn*,
99 Cal.App.3d 805, 160 Cal. Rptr. 471 (1979) ..................................................................... 14

*Warner v. Tinder Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015)................................................................................. 17,18

*White v. Ring LLC*,
No. 22-cv-6909, 2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) ........................................... 35

*Williams v. DDR Media, LLC,*
No. 22 CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ................................ 20

*Yamauchi v. Cotterman,*
84 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................ 3

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................................................ 21

*Zaremba v. Marvin Lumber & Cedar Co.*,
458 F.Supp.2d 545, 552 (N.D. Ohio 2006)................................................................. 26

*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180 (9th Cir.2001)...................................................................................... 28

**OTHER AUTHORITY**

39 F.R.D. 69, 102 (1966) ........................................................................................ 29

**STATUTE**

9 U.S.C. § 2 ............................................................................................................ 34

9 U.S.C. § 4 ............................................................................................................ 34

18 U.S.C. § 2520(e) ................................................................................................ 11

18 U.S.C. § 2511(2)(d)............................................................................................ 11

42 U.S.C. § 1320d-6................................................................................................ 12

Cal. Bus. & Prof. Code § 17200 .............................................................................. 16

Cal. Bus. & Prof. Code § 17204 .............................................................................. 18, 22

Cal. Civ. Code § 56.10(a)......................................................................................... 14

Cal. Civ. Code § 56.101 ........................................................................................... 14

Cal. Civ. Code § 1770(a)........................................................................................... 21

Cal. Civ. Pro. § 335.1 ............................................................................................... 6,22

Cal. Civ. Pro. § 339.................................................................................................. 9

California Pen. Code § 496 ...................................................................................... 23

Cal. Pen. Code § 631(a) ........................................................................................... 13

Ohio Revised Code § 1349.19(B)(1) .......... 25,26

Ohio Revised Code § 1345.02 .......... 26

Ohio Revised Code § 1345.09 .......... 26,27

Ohio Revised Code § 1345.10 .......... 26

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff, individually and as the personal representative of a putative class, filed her Class Action lawsuit on April 8, 2024. The Complaint alleges that Bright Heart installed tracking pixels on its publicly facing website, which transmitted Plaintiff's and Class Members' personal information to third-party providers like Meta/Facebook without consent. Plaintiff alleges thirteen causes of action. Bright Heart respectfully moves pursuant to Fed. R. Civ. Pro. 12(b)(6) for an order dismissing this matter; or alternatively pursuant to Fed. R. Civ. Pro. 12(f) for an order striking Plaintiff's class allegations; or alternatively pursuant Fed. R. Civ. Pro. 12(3) and 9 U.S.C. § 4 for an order compelling arbitration of all of the claims brought by Plaintiff against Bright Heart in this action.

## II. STATEMENT OF RELEVANT FACTS

Plaintiff is a citizen of Ohio (emphasis added). *See* Complaint at ¶ 38. Plaintiff alleges that "Bright Heart provides telemedicine and related services online for a variety of highly sensitive medical conditions such as substance use disorders." *See Id*, at ¶ 1. Plaintiff alleges that Bright Heart "owns, controls, and maintains the website https://www.brighthearthealth.com/." (the "Website"). *See Id*, at ¶ 3. Plaintiff alleges Bright Heart "also owns, controls and operates a **patient portal**, which patients can access after they ask to sign up for Defendant's services." (the "Portal" and collectively with Website, "Web Properties"). *See Id*, at ¶ 4. Plaintiff alleges that "in order to use Defendant's Website, **create patient accounts** with Defendant, and/or utilize Defendant's services, individuals are required to share highly sensitive Private Information through Defendant's Website." *See Id*, at ¶ 5. Plaintiff alleges that Bright Heart "installed the Meta Pixel and other invisible third-party tracking technology including Google Analytics, on its Web Properties in order to intercept Users' PII and PHI with the express purpose of disclosing that Private Information to third parties such as Meta and/or Google." *See Id*, at ¶ 12. Plaintiff alleges that she "has been a patient of Bright Heart since at least June 2022 and started

using Defendant's Website around the same time or even earlier, in March 2022." *See Id*, at ¶ 44. Plaintiff alleges that "on numerous occasions beginning in or around March or June 2022 and continuing as recently as August 2022, Plaintiff utilized Defendant's Web Properties on her personal electronic devices to…**create an account**." *See Id*, at ¶ 47. Notwithstanding the above allegations, at no point since Plaintiff allegedly began using the Website on or around March 2022 did the Website contain a patient portal. *See* Declaration of Jonathan Ciampi, at ¶ 8. Accordingly, Plaintiff's Complaint is premised on erroneous material facts and must be dismissed.

## III. THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE 12(B)(6) AS PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF

Pursuant to Fed. R. Civ. P. 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" *Id*., at 555 (internal citations omitted). Legal conclusions "**must be supported by factual allegations**." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Id., at* 678 (2009) (*quoting Twombly*, 550 U.S. 544, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (*quoting Twombly*, 550 U.S. 544, 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id*. (*quoting Twombly*, 550 U.S. 544, 557). Accordingly, as explained below, Plaintiff's claims fail under Rule 12(b)(6).

**A. Plaintiff's claims are defeated by the statute of limitations**

While not expressly provided, Plaintiff appears to rely on the discovery rule and/or fraudulent concealment exception to toll the applicable statute of limitations. *See* Complaint, at ¶¶215-220. Notwithstanding, "a cause of action accrues when the claim is complete with all of its elements." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,* 522 F.3d 1049, 1054 (9th Cir. 2008) (internal citation omitted). "Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Id.* "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her." *Id*. "A plaintiff relying on the discovery rule to show delayed accrual of a cause of action bears the burden of 'pleading and proving belated discovery.'" *Yamauchi v. Cotterman,* 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015) (internal citation omitted). "A close cousin of the discovery rule is the well accepted principle of fraudulent concealment." *Bernson v. Browning–Ferris Indus. of California, Inc.,* 7 Cal.4th 926, 931, 30 Cal.Rptr.2d 440, 873 P.2d 613 (1994). "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). "The plaintiff bears the burden of pleading fraudulent concealment." *In re Animation Workers Antitrust Litig.,* 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015). "Moreover, allegations of fraudulent concealment must be pled with particularity." *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1198915, at *18 (N.D. Cal. Mar. 30, 2021) (*citing Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988)). Accordingly, tolling premised on fraudulent concealment is subject to Fed. R. Civ. P. 9(b). *See Ryan v. Microsoft Corp.,* 147 F. Supp. 3d 868, 886 (N.D. Cal. 2015). Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." *Id*. "Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out." *Walsh v. Microsoft Corp.,* 63 F. Supp. 3d 1312, 1321 (W.D. Wash. 2014) (internal citation omitted)

Here, Plaintiff fails to satisfy the heightened pleading standard of Rule 9(b). Plaintiff merely alleges that "the earliest Plaintiff and Class Members could have known about Defendant's conduct was approximately in April or May of 2023." *See* Complaint, at ¶ 219. Notably, Plaintiff fails to explain how she uncovered Bright Heart's alleged conduct around such time period as opposed to an earlier date. *See Id*., at ¶¶ 215-220. Without any facts to support her conclusory allegation, her equitable tolling argument fails the Rule 9(b) requirements. Furthermore, Plaintiff had reasonable ground for suspicion of Bright Heart's alleged conduct in March 2022, when she allegedly first started using Bright Heart's Website. *See* Complaint, at ¶ 44. Specifically throughout the Complaint, Plaintiff admits she had knowledge of Bright Heart's Privacy Policy, which at all times stated Bright Heart may collect personal information via technology and may disclose same to third parties.[1] *See* Complaint, at ¶¶ 35, 157, 158, 236, 298, 346, 356; *see also* fn 40; *see also* Declaration of Jonathan Ciampi, at ¶ 7, Ex B. Accordingly, Plaintiff cannot rely on equitable tolling. As such, as explained below, Plaintiff's causes of action are time barred by the applicable statute of limitations.

**B. Plaintiff's claims are legally deficient as they rely on outdated legal authority**

Throughout Plaintiff's Complaint, she alleges that Bright Heart violated HIPAA based on the Office for Civil Rights ("OCR") at the U.S. Department of Health and Human Service's ("HHS") December 2022 and March 2024 guidance relating to a covered entities use of online trackers (collectively, the "Guidance"). *See* Complaint, ¶¶ 85, 111,116 114-120. Notwithstanding, such argument is unpersuasive as the Guidance was vacated and held to be "unlawful, and…promulgated

[1] *See* https://www.brighthearthealth.com/site-privacy-policy/

in clear excess of HHS's authority under HIPAA." *See Am. Hosp. Ass'n v. Becerra,* No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024). *Am. Hosp. Ass'n* involved two hospital associations and a regional healthcare system, that file suit to stop enforcement of the Guidance, which "provided several hypotheticals that trigger HIPAA obligations, including circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a UPW addressing specific health conditions or healthcare providers. [the 'Proscribed Combination']." *Am. Hosp. Ass'n,* 2024 WL 3075865, at *2. *Am. Hosp. Ass'n* held that "the Proscribed Combination facially violates HIPAA's unambiguous definition of IIHI." *Id.*, 2024 WL 3075865, at *11. In doing so, *Am. Hosp. Ass'n* looked to HIPAA's definition of Individually Identifiable Health Information ("IIHI"), and concluded that ""**<u>the Proscribed Combination could never fit HIPAA's definition of IIHI.</u>**" *Id.*, at *14. To validate this point, *Am. Hosp. Ass'n* provided the following hypothetical:

> Suppose a UPW visitor's query related to someone's healthcare. Suppose further that their query related to *their* healthcare. Without knowing information that's never received—i.e., the visitor's subjective motive—**<u>the resulting metadata could never identify that individual's PHI</u>**. Simply put, Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)

*Id.* Here, the *Am. Hosp. Ass'n* decision squarely aligns with Plaintiff's allegations, and accordingly the Complaint must be dismissed. Specifically, as explained above, at no point since Plaintiff began using the Website on our around March 2022 did the Website contain a patient portal. *See* Declaration of Jonathan Ciampi, at ¶ 8. Accordingly, as Plaintiff's allegations relate only to the unauthenticated section of the Website, the decision in *Am. Hosp. Ass'n* is controlling. Furthermore, Plaintiff alleges that Bright Heart collected her IP address and web activity on the Website. *See* Complaint, *generally*. However, such combination of information is the exact equivalent to the Proscribed Combination discussed in *Am. Hosp. Ass'n*, which the court held could never fit HIPAA's definition of IIHI. Accordingly, Plaintiff's claims must be dismissed as it relies on authority that was vacated and held to be illegal.

### C. Plaintiff's negligence claim is legally deficient because it is brought outside the statute of limitations, and Plaintiff fails to allege duty and damages

As an initial matter, Plaintiff's negligence claim is time barred because Cal. Civ. Pro. § 335.1 provides for a two year statute of limitations. Here, Plaintiff's alleges that she "started using Defendant's Website…in March 2022." *See* Complaint, at ¶ 44. Accordingly, this is the date when Bright Heart's alleged conduct first occurred and when all the elements of negligence were allegedly satisfied. Furthermore, as explained above, the statute of limitations were not tolled. As such, Plaintiff's Complaint is time barred as it was filed on April 8, 2024.

**1. Bright Heart owed Plaintiff no duty**

Even assuming that Plaintiff's negligence claim is not barred by the statute of limitations (which it is), her claim would still fail because Bright Heart owed her no duty. Plaintiff alleges that Bright Heart owed her a statutory duty under HIPAA and the FTC Act to secure and safeguard her private information, however such argument has been consistently rejected by this court. *See Doe v. Meta Platforms, Inc.*, No. 22-CV-03580-WHO, 2023 WL 5837443, at *13 (N.D. Cal. Sept. 7, 2023) ("the negligence per se claim based on a duty created by HIPAA is dismissed"); *Austin v. Atlina*, No. 20-CV-6363-YGR, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021) ("Because there is no private right of action under HIPAA, plaintiff's HIPAA claim is not cognizable under common law"); *Teeter v. Easterseals-Goodwill N. Rocky Mountain, Inc.*, No. CV-22-96-GF-BMM, 2023 WL 2330241, at *4 (D. Mont. Mar. 2, 2023) (dismissing negligence per se cause of action based on HIPAA); *see also Delta Sav. Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001) ("[t]o bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from a federal law"); *In re: Netgain Tech., LLC*, No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *16 (D. Minn. June 2, 2022) ("Here, Plaintiffs have not cited any precedent in California…that permits a state-law negligence per se claim to proceed based on…a violation of Section 5 of the FTC Act.").

Plaintiff next alleges that Bright Heart owed her a duty of care to secure and safeguard her private information "due to the special relationship that existed between Defendant and its patients, which is

recognized by statute, regulations, and the common law." *See* Complaint, at ¶ 241. As an initial matter, Plaintiff admits that her proposed class definition is too broad because by own her own standard she alleges a special relationship includes only "patient[s]", not "all individuals". *See Id*, at ¶¶ 221-22, 241. Accordingly, as explained below, here class allegations must be stricken. Additionally, Plaintiff's argument has been consistently rejected. *See R.C. v. Walgreen Co.,* No. EDCV 23-1933 JGB (SPX), 2024 WL 2263395, at *10 (C.D. Cal. May 9, 2024) ("common examples of special relationships are those 'between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests.'" *Id.*, (*quoting Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216, 276 Cal.Rptr.3d 434, 483 P.3d 159 (2021)); *Basaloco-Lapo v. United States,* No. 89-15348, 1991 WL 172381, at *1 (9th Cir. Sept. 4, 1991)("Examples of this special relationship are parent-child, master-servant, and possessor of land/chattels-licensee"); *Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1125 (S.D. Cal. 2023) ("The Court is unpersuaded by Plaintiffs' argument that the fiduciary relationship between a doctor and patient 'imposes a fiduciary duty upon healthcare providers with respect to their patients as well as a duty to safeguard personal and medical information consistent with medical privacy statutes and industry standards."); *Moore v. Regents of University of California*, 51 Cal.3d 120, 271 Cal. Rptr. 146, 153, 793 P.2d 479 (1990) ("The California Supreme Court has expressly held that a healthcare provider does not have a fiduciary relationship with patients and can only be held liable for a breach of fiduciary duty claim on the basis of a recognized theory of secondary liability"); *Luiz v. Queen of Angels Hospital*, 53 Cal. App. 2d 310, 313, 127 P.2d 966 (Cal. Ct. App. 1942) ("The relationship of hospital and patient is not per se a fiduciary or confidential one."); *Santoro v. Tower Health,* No. CV 22-4580, 2024 WL 1773371, at *5 (E.D. Pa. Apr. 24, 2024) ( "Here, lacking allegations spelling out what information the Meta Pixel collected, we have no basis to conclude that a duty existed to safeguard the information. And if such a duty existed, we cannot assess whether Tower Health breached it by disclosing the information to Meta.").

**2. Plaintiff has not alleged sufficient damages.**

This Court has recognized that a plaintiff must allege a cognizable, nonspeculative harm to adequately bring a negligence claim. *See Huynh v. Quora*, Inc., 508 F. Supp. 3d 633, 649 (N.D. Cal. 2020) (""appreciable, nonspeculative, present harm is an essential element of a negligence cause of action."); *Castillo v. Seagate Technology, LLC*, 16-cv-01958-RS, 2016 WL 9280242 at *4-5 (N.D. Cal. Sept. 14, 2016) (same). As it relates to litigation involving pixels and online trackers, courts sitting in the Ninth Circuit have continuously dismissed negligence claims for failure to adequately plead damages. For instance, in *C.M. v. MarinHealth Medical Group, Inc.,* plaintiff alleged that he was injured when his private information was misused and that as a result he was subjected to and will continue to be subjected to unsolicited, targeted advertising related to his specific medical conditions. *Id.,* No. 23-CV-04179-WHO, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024). Plaintiff also alleged that he suffered a loss of the value of that private information and loss of control over the same. *MarinHealth* held:

> with respect to the diminution in value theory of injury…where the crux of th[e] case concerns Meta's receipt of individually identifiable health information, that plaintiffs apparently do not want Meta or anyone other than their healthcare providers to have it is incongruous for plaintiff to then allege they intended to participate in this market, or otherwise to derive economic value from their PII.

*Id*., (internal quotations omitted) (*quoting Doe,* 2023 WL 5837443, at *17); *see also B.K. v. Eisenhower Med. Ctr*., No. EDCV232092JGBKKX, 2024 WL 878100, at *8 (C.D. Cal. Feb. 29, 2024), on reconsideration in_part, No. EDCV 23-2092 JGB (DTBX), 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ("Plaintiffs argue that their negligence claim is sufficiently pleaded because they were injured 'when their Private Information was wrongfully divulged and misused' and due to the loss of the value of their Private Information… The Court has already rejected both of these arguments[.]") *Murphy v. Thomas Jefferson Univ. Hosps., Inc.,* No. CV 22-4674, 2023 WL 7017734, at *5 (E.D. Pa. Oct. 10, 2023) ("Plaintiffs allege that they have 'suffered damages,' including 'embarrassment,

humiliation, emotional harm, and distress', but the Court cannot consider these boilerplate allegations in the absence of facts to support them." ). Here, Plaintiff and the Class Members allege "increased infiltrations in their privacy through spam, and targeted advertisement they did not ask for, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation, and loss of enjoyment of life." *See* Complaint, at ¶ 244. Notwithstanding, Plaintiff fails to allege specific instances of such damages, and therefore fails her pleading requirements under *Iqbal*. Additionally, as explained above court's have continuously rejected Plaintiff's damages theories.

**D. Plaintiff's breach of confidence claim is legally deficient because it is brought outside the statute of limitations, and her personal information is not novel**

As an initial matter, as explained above, Plaintiff's breach of confidence claim is time barred because Cal. Civ. Pro. § 339 provides for a two year statute of limitations. *See Id., see also Thompson v. California Brewing Co.,* 150 Cal. App. 2d 469, 472. Furthermore, a breach of confidence claim "is based upon the concept of an implied obligation or contract between the parties that confidential information will not be disclosed." *Enter. Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1226-27 (9th Cir.1997). A breach of confidence claim applies only to "confidential and novel information." *See Berkla v. Corel Corp.,* 302 F.3d 909, 917 (9th Cir. 2002); *Tele-Count Eng'rs, Inc.v. Pac. Tel. & Tel. Co.*, 214 Cal. Rptr. 276, 279 (Cal. Ct. App. 1985) ("[A]ppellate decisions have uniformly required that an idea must be confidential and novel to warrant protection."); *Faris v. Enberg*, 158 Cal. Rptr. 704, 712 (Cal. Ct. App. 1979) (idea must be offered and received "in confidence"). "Novelty" in a breach of confidence claim means something that "has never been done before." *Friedman v. DirecTV*, 262 F. Supp. 3d 1000, 1006 (C.D. Cal. 2015).Courts sitting within the Ninth Circuit routinely dismiss breach of confidence claims as it relates to pixel litigation. *See Eisenhower.,* 2024 WL 878100, at *8; *Doe* v. *Davita.,* 2024 WL 1772854, at *3 (S.D. Cal. Apr. 24, 2024); *see also Kane v. Univ. of Rochester,* No. 23-CV-6027-FPG, 2024 WL 1178340, at *12 (W.D.N.Y. Mar. 19, 2024) ("despite Defendant's attempt to mystify Plaintiffs' breach of confidence

claim, it is relatively straightforward: Plaintiffs allege (1) that Defendant is a healthcare provider, (2) that Defendant deployed the Pixel and CAPI on its website, (3) that through those tools, Defendant disclosed their Private Information to Facebook, and (4) that they suffered damages as a result…the Court agrees with Defendants that Plaintiffs have failed to state a breach of confidence claim."). Here, as explained above, Bright Heart does not contain a patient portal page on its Website. Furthermore, Plaintiff alleges Bright Heart shared the URL titles of the pages Plaintiff allegedly visited on the unauthenticated section of the Website. *See* Complaint, *generally*. Notwithstanding, Plaintiff fails to allege how URL titles are novel information, nor can she as URL titles are publicly available and can be viewed by any visitor of the Website. *See* Complaint, at ¶¶ 247-253.

**E. Plaintiff's unjust enrichment claims is legally deficient because she fails to allege that she has an inadequate remedy at law**

"There is no standalone cause of action for unjust enrichment under California law." *Riordan v. W. Digital Corp.,* No. 5:21-CV-06074-EJD, 2023 WL 6462857, at *9 (N.D. Cal. Sept. 29, 2023); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). *Astiana* held that a court *may* construe unjust enrichment instead as a quasi-contract claim seeking restitution, which is a legal fiction in which the court implies a contract when the defendant obtained a benefit from the plaintiff by fraud, duress, coercion, or similar conduct. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010); *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Notwithstanding, even under a quasi-contract theory, Plaintiff has "failed to plead that [her] legal remedies are inadequate, as is required to state a claim for an equitable remedy." *Ketayi v. Health Enrollment Grp*., 516 F. Supp. 3d 1092, 1140 (S.D. Cal. 2021). "The Ninth Circuit's recent decision in *Sonner* requires that a complaint seeking equitable relief allege that legal remedies are inadequate." *Id*; *citing Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020). Additionally, a plaintiff must plausibly allege or explain how the equitable relief they seek alongside damages is more prompt, certain, or efficient than damages. *Sonner,* 971 F.3d 834, 844; *see also Anderson v. Apple Inc.,*

500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) ("the plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done. Because they also request money damages, it is possible their legal remedy is sufficient; on this record, they have not yet disproven that."). Here, Plaintiff merely alleges that she and the Class "have no adequate remedy at law[.]" Complaint, at ¶ 265. However, this plain, unsupported conclusory statement does not meet the pleading standard as required within *Sonner* as Plaintiff does not allege how equitable relief is more prompt, certain or efficient than damages. Accordingly, Plaintiff's unjust enrichment claim must be dismissed.

### F. Plaintiff's ECPA claim is legally deficient because Bright Heart was a party to the alleged communications

As an initial matter, as explained above, Plaintiff's Electronic Communications Privacy Act ("ECPA" or "Wiretap Act") claim is time barred because 18 U.S.C. § 2520(e) provides for a two year statute of limitations. Furthermore, ECPA contains an exception, which provides that:

> It *shall not be unlawful* under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception[.]

18 U.S.C. § 2511(2)(d). ECPA "allows interception where the interception is made by a 'party' to the communication or where a 'party' has consented to the interception." *Doe,* 2023 WL 5837443, at *4. Relying on this exception, as it relates to pixel litigation, courts sitting within the Ninth Circuit and throughout the country have continuously dismissed ECPA claims. *See Doe I v. Google LLC*, No. 23-CV-02431-VC, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) ( "The plaintiffs have not shown they are likely to succeed on their ECPA claim because…[a]lthough the plaintiffs did not consent to Google receiving their health information, the health care providers consented to the use of Google source code on their web properties."); *Doe v. Kaiser Found. Health Plan, Inc.,* No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (The "ECPA claim does not plausibly state a basis for liability."); *R.S. v. Prime Healthcare Servs., Inc.,* No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609,

at *3 (C.D. Cal. Aug. 7, 2024) (Here, as the party that "installed tracking technologies on its Web Properties," Prime Healthcare necessarily consented to the use of those pixels and the "interception" of the communications between R.S. and Prime Healthcare. Accordingly, the Court dismisses R.S.'s ECPA claim.) Here, the exception under 18 U.S.C. § 2511(2)(d) applies as Bright Heart was a party to the alleged communication with Plaintiff. To be sure of this, Plaintiff admits in her Complaint that "the transmission of PII and PHI [was] **between Plaintiff and Class Members and Defendant's Web Properties**[.]" *See* Complaint, at ¶ 270.

In the Complaint, Plaintiffs allege that 18 U.S.C. § 2511(2)(d) is inapplicable because Bright Heart intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of "committing a tortious act in violation of the Constitution or laws of the United States of any State" and Bright Heart committed a criminal act by alleging violating 42 U.S.C. § 1320d-6 of HIPAA. *See* Complaint, at ¶¶ 281, 284-290. Plaintiffs argument is unpersuasive however as this Court rejected same in *Kaiser*. In dismissing plaintiff's ECPA claim, *Kaiser* held that the "criminal or tortious purpose must be **separate and independent** from the act of the recording [*i.e.*, the act of interception]." *Id*., 2024 WL 1589982, at *8 (*quoting Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)); *see also Doe I*, 2023 WL 6882766, at *2 (same); *Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010) (same); *Nienaber v. Overlake Hosp. Med. Ctr.,* No. 2:23-CV-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (same). Plaintiffs in *Kaiser* additionally argued that 18 U.S.C. § 2511(2)(d) is inapplicable because "the communications were intercepted [1] for the purpose of violating HIPAA, a criminal act, and [2] to tortiously collect personal information without consent or compensation to obtain market research and consumer analysis without paying for it." *Id*., at *10. This Court held that "**both of these arguments are problematic**." *Id. Kaiser* held that this first "argument is contrary to *Sussman* which holds that the **act of interception itself cannot be the crime or the tort**. Violation of HIPAA was not the purpose of the alleged interception."

*Id*. *Kaiser* held this second argument "inheres in the alleged interception. The collection of information itself was not for the purpose of committing a crime or tort…rather, the apparent purpose was to use the information collected for market research and consumer analysis solely for the benefit of Kaiser in better reaching and serving its patients[.]" *Id*. *See also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception ... is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."). Here, Plaintiff makes the same arguments as the *Kaiser* plaintiffs as to why the crime-tort exception should apply, which as explained above, this Court dismissed. Accordingly, this Court should follow its recent precedent and dismiss Plaintiff's ECPA claim.

**G. Plaintiff's CIPA claim is legally deficient because it is premised on the same legal standard as ECPA**

The California Invasion of Privacy Act ("CIPA") prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a). As an initial matter, Plaintiff and the Class lack standing to bring a CIPA claim because Plaintiff is an Ohio resident. *See* Complaint, at ¶ 38. Standing is not dispensed in gross; rather, plaintiffs **must demonstrate standing for each claim** that they press and for each form of relief that they seek. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "Plaintiffs in a putative class action who lack standing to bring certain claims cannot litigate those claims on behalf of those not present." *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-4457 SC, 2013 WL 791457, at *6 (N.D. Cal. Mar. 4, 2013). In *Kaiser*, this Court held that "**only a California Plaintiff can bring a CIPA claim**[.]" *Id,* 2024 WL 1589982, at *13. Similarly to *Kaiser*, Plaintiff is not a California resident or citizen, and therefore her CIPA claim must be dismissed.

Even if Plaintiff had standing (which she does not), her CIPA claim would still fail because CIPA "is similar in nature to the ECPA", which as explained above is legally deficient and must be dismissed. *See Id.,* at *13; *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir.

2020) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.") (*quoting Warden v. Kahn*, 99 Cal.App.3d 805, 160 Cal. Rptr. 471, 475 (1979)); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 152 (3d Cir. 2015) (holding that CIPA claims could be dismissed because the parties were exempted from liability under the Wiretap Act's party exception). Here, Plaintiff again admits that there was "lines of internet communication **between Plaintiff and Class Members on the one hand, and Defendant's Web Properties on the other hand**[.]" *See* Complaint, at ¶¶ 308, 313. Accordingly, for the same reasons explained above, the party exception applies, and this Court should dismiss Plaintiff's CIPA claim.

### H. Plaintiff's CMIA claim is legally deficient because it is entirely speculative and such cause of action is only available to California Residents

§ 56.10 of the California Confidentiality of Medical Information Act ("CMIA") states that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization." Cal. Civ. Code § 56.10(a). Additionally, § 56.101 of the CMIA states that "any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties[.]" Cal. Civ. Code § 56.101(a). Here, as an initial matter, similar to Plaintiff's CIPA claim, Plaintiff and the Class lack standing to bring a CMIA claim because Plaintiff is an Ohio resident. *See* Complaint, at ¶ 38; *see also Kaiser*, 2024 WL 1589982, at *25 ("The parties essentially incorporate their arguments on the CIPA claim here. Thus, the Court rules on the CMIA claim just as it ruled on the CIPA claim**: only a California Plaintiff may bring a CMIA claim**").

Even if Plaintiff has standing (which she does not), her CMIA claim would still fail because "a

plaintiff must allege facts sufficient to 'raise a right to relief above the speculative level.'" *Doe v. Regents of Univ. of California,* 672 F. Supp. 3d 813, 818 (N.D. Cal. 2023) (*quoting Twombly*, 550 U.S. at 555, 570). Here, Plaintiff's Complaint mirrors the complaint filed by Plaintiff's counsel in *Eisenhower,* which the Court dismissed. *Id., 2024 WL 878100, at *4.* In *Eisenhower*, the plaintiff alleged defendant violated Section 56.10 because they "knowingly, willfully, or negligently disclosed Plaintiffs' medical information to Meta, allowing Meta to now advertise and target Plaintiffs" and "they started to receive unsolicited advertisements on their Facebook accounts relating to their medical conditions shortly after visiting the Website." *See Id*. In dismissing plaintiff's CMIA claim, *Eisenhower* held that:

> Plaintiffs fail to allege what, if any, medical information or medical records were transmitted or disclosed. Notably, Plaintiffs' Complaint is 90 pages long but includes less than four pages of vague allegations about Plaintiffs and their experiences with Defendant…The Complaint is replete with conjectures and hypothetical scenarios and patients… Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed. B.K. states she started using the Website over three years ago and started receiving unsolicited ads "shortly after" but provides no more information about the alleged disclosures…N.Z. alleges the same pattern but states that it occurred "over seven years ago."… Accordingly, Plaintiffs' claim under Section 56.10 fails.

*Id*. Similarly, in *Davita,* the Court dismissed plaintiffs' CMIA claim because plaintiffs

> allege in a conclusory manner that Defendant disclosed to Meta their personal, confidential, and sensitive medical information; medical treatment; and payment information… These allegations are devoid of any facts supporting their contention that these activities took place. For example, Plaintiff Doe I merely states she 'accessed and used [Defendant's] Online Platforms on her phone and desktop computer to submit a grievance to the Defendant about misdiagnosing her, to research different types of dialysis, to watch a series of videos the Defendant requires in order to receive treatment, to research recipes for her particular dialysis diet, and to locate the facility she'd be going to for treatment.'…Plaintiffs also do not explain what specific information they provided to Defendant. Plaintiffs cannot maintain their theory of the case absent this factual support. While Plaintiffs provide an example of a search by a hypothetical patient… they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta.

*Id*., 2024 WL 1772854, at *2. Identical to the plaintiffs in *Eisenhower* and *Devita*, here the Plaintiff merely alleges that Bright Heart violated CMIA because it "knowingly, willfully, or negligently failed to create, maintain, preserve store, abandon, destroy, and dispose of medical information in a manner

that preserved its confidentiality by soliciting, intercepting, and receiving Plaintiff's and Class Members' Private information, and sharing it with advertisers and for advertising purposes[.]" *See* Complaint, at ¶ 328. Notwithstanding, as explained above, Bright Heart does not contain a patient portal page on its Website. Furthermore, Plaintiff alleges Bright Heart shared the URL titles of the pages Plaintiff allegedly visited on the unauthenticated section of the Website. *See* Complaint, *generally*. Notwithstanding, Plaintiff fails to allege how URL titles on the unauthenticated section of Bright Heart's Website are medical information, nor can she in light of the OCR Guidance being struck down. Rather, URL titles are non-medical information that are publicly available to any visitor of the Website.

**I. Plaintiff's UCL claim is legally deficient because the alleged misconduct did not occur in California and Plaintiff fails to allege that she has an inadequate remedy**

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." *See* Cal. Bus. & Prof. Code § 17200. Here, as an initial matter, Plaintiff does not have standing to bring a UCL claim because the UCL "does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California…Indeed, beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California 'raises significant due process problems.'" *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), aff'd sub nom. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) (*quoting Norwest Mortgage, Inc. v. Superior Court,* 72 Cal.App.4th 214, 222, 85 Cal.Rptr.2d 18 (1999)); *see also Ehret v. Uber Techs., Inc.,* 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014) ("Simply put, 'the UCL does not apply to actions occurring outside of California that injure non-residents.'"); *Sullivan v. Oracle Corp.,* 51 Cal.4th 1191, 127 Cal.Rptr.3d 185, 254 P.3d 237 (2011) ("However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state.'"). Here, Plaintiff fails to allege how the injuries she allegedly suffered or Bright Heart's alleged misconduct occurred in California. *See* Complaint, at ¶¶ 335 – 353. In contrast, Plaintiff is a

resident of Ohio and fails to allege that she accessed Bright Heart's website in California. See *Id*., at ¶ 38. Rather Plaintiff admits that "**<u>Plaintiff…used Defendant's website from Ohio</u>**." *See Id*., at ¶ 388. Plaintiff merely alleges that Bright Heart is incorporated and headquartered in California, however that is not enough to overcome due process concerns and the heavy presumption against the extraterritorial application of the UCL. *See Gross v. Symantec Corp*., No. CV 12–00154 CRB, 2012 WL 3116158, *7 (N.D.Cal. July 31, 2012) (noting that, while plaintiff had alleged that defendant was headquartered in California, "several courts have found that this allegation is not enough to create a plausible inference that the unlawful conduct emanated from that location[.]"); *Norwest Mortgage, Inc.,* 72 Cal.App.4th at 227, 85 Cal.Rptr.2d 18 (noting that the only contact was defendant's state of incorporation—"[b]ecause Norwest Mortgage's headquarters and principal place of business, the place Category III members were injured, and the place the injury-producing conduct occurred are outside California, we conclude application of the UCL to the claims of Class III members would be arbitrary and unfair and transgress due process limitations"); *Warner v. Tinder Inc.,* 105 F. Supp. 3d 1083, 1097 (C.D. Cal. 2015) ("Because Warner does not adequately allege whether decisions concerning Tinder's business practices and advertising emanated from California, and does not plead facts demonstrating that this is so, his UCL claim fails."); *Gustafson v. BAC Home Loans Serv'g, LP,* No. CV 11–915–JST (ANx), 2012 WL 4761733, *6 (C.D.Cal. Apr. 12, 2012) (concluding that plaintiff's allegation that defendants' scheme was devised, implemented, and directed from their offices in California was too conclusory).

Even if Plaintiff has standing to bring a UCL claim (which she does not), UCL claims are "equitable in nature" and "remedies for private individuals bringing suit under [UCL] are limited to restitution and injunctive relief." *Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 WL 5184422, *2 (C.D. Cal. Dec. 21, 2009); *see also Warner,* F. Supp. 3d 1083, 1090 ("A UCL action is equitable in nature; damages cannot be recovered[.]") As explained, *supra*, as an equitable remedy, Plaintiff must plausibly allege that she lacks an adequate remedy at law and she must plausibly allege or explain how the

equitable relief she seeks is more prompt, certain, or efficient than damages. *See Sonner* 971 F.3d 834, 844; *Anderson,* 500 F. Supp. 3d 993, 1009. As explained above, Plaintiff entirely fails to satisfy such standard. *See* Complaint, at ¶¶ 335-353.

Furthermore, UCL claims "may only be brought by 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Walgreen,* 2024 WL 2263395, at *17 (*quoting* Cal. Bus. & Prof. Code § 17204). Plaintiff, therefore, must "demonstrate some form of economic injury[.]" *Id*. Here, Plaintiff merely alleges in a conclusory fashion that she and the class "suffered injury in fact and lost money or property, including but not limited to payments to Defendant and/or other valuable consideration. The unauthorized access to Plaintiff's and Nationwide Class Members' private and personal data also diminished the value of that Private Information." *See* Complaint, at ¶ 352. Plaintiff also alleges that had she and the Class known Bright Heart would disclose and misuse their Private information, "they never would have used Defendant's Web Properties Portal and would not have shared their Personal Information[.]" *Id*., at ¶ 338. Notably, Plaintiff fails to specifically allege the bare minimum, such as what payment(s) were made, when they were made, who made the payments and how much they were for. *See* Complaint, *generally*. Additionally, Plaintiff's argument has consistently been rejected by courts sitting in the Ninth Circuit. For instance, in *Walgreen*, the plaintiffs alleged an injury in fact under the UCL based on loss of the benefit of the bargain and diminution in value of their personal health information. *See Id*,, 2024 WL 2263395, at *17. *Walgreen* held that plaintiff's

> benefit of the bargain argument fails because they do not allege that they…[have] not received what [they] bargained for…Plaintiffs purchased a diabetes test kit and Monistat. Though they allege that if they were aware their information would be disclosed, they 'would not have used Defendant's services or would have paid considerably less for those services,'…such allegations are conclusory and unattenuated to the other facts alleged. This court has also consistently rejected the idea that individuals have an inherent property right in their personal information, or that said information has any independent monetary value.

*Id*. Furthermore, in *Katz-Lacabe v. Oracle Am., Inc.,* this Court held that "the weight of the authority

in the district and the state… point in the opposite direction: that 'the ‘mere misappropriation of personal information’ does not establish compensable damages.'" *Id.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (citation omitted). *Katz*, analyzing plaintiffs' UCL claim, therefore held that even if plaintiffs alleged disclosure of their personal information without consent, plaintiffs still " fail to show they have an economic injury." *Id.*; *see also In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 972 (N.D. Cal. 2021) (concluding economic loss theory was “purely hypothetical” because, among other reasons, “there are no facts to suggest that Plaintiffs intended to monetize their individual voice recordings” at issue in the litigation); *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-CV-0725-BAS-WVG, 2022 WL 16985001, at *5 (S.D. Cal. Nov. 16, 2022) (dismissing UCL claim based on loss of personal health data where “[t]he FAC does not allege any opportunity through which Plaintiff might” be able to “profit from his own data”); *Hart v. TWC Prod. & Tech. LLC,* 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (“That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.”) *Desert Care Network,* 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) ("Although it is true that Defendants may have gained money through sharing or using Plaintiffs' data, this does not establish that Plaintiffs have *lost* money…Plaintiffs have not, for example, alleged that Defendants' conduct prevented them from monetizing their medical or otherwise personal information on their own terms"). Here, Plaintiff fails to allege that she attempted to sell her personal information, or was precluding from doing so. Based on above, Plaintiff's UCL claims are legally deficient.

**J. Plaintiff's California Constitutional Invasion of Privacy and common law intrusion upon seclusion claims are legally deficient because she does not specifically allege what personal information was allegedly shared and such cause of action is only available to California residents**

Here, as an initial matter and as explained above, Plaintiff's claims are time barred because Cal. Civ. Pro. § 335.1 provides for a two year statute of limitations. *Id*; *see also Cain v. State Farm Mut. Auto. Ins. Co.,* 62 Cal. App. 3d 310, 313 (Ct. App. 1976). Furthermore, "the tests for an invasion of

privacy under the California Constitution and intrusion upon seclusion under California common law 'involve[ ] similar elements'—as a result, 'courts consider the claims together' with one test, 'and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.'" *Katz-Lacabe,* 668 F. Supp. 3d 928, 941 (*citing Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 97 Cal.Rptr.3d 274, 211 P.3d 1063 (2009)); *see also In re Google RTB Consumer Priv. Litig.,* 606 F. Supp. 3d 935, 945 (N.D. Cal. 2022) ("A claim for intrusion upon seclusion under California common law involves similar elements [as a claim for invasion of privacy under the California Constitution]).

Here, Plaintiff does not have standing to bring a claim under the California Constitution as she is a resident of Ohio. *See Russo v. APL Marine Servs., Ltd.*, 694 F. App'x 585, 586 (9th Cir. 2017) (affirming dismissal of California constitutional claim based on presumption against extraterritoriality) (*quoting Morgan v. Imperial Irrigation Dist.*, 223 Cal. App. 4th 892 (2014) ("Ordinarily, [r]ules of construction and interpretation that are applicable when considering statutes are equally applicable in interpreting constitutional provisions."). Furthermore, "with respect to the second factor, '[t]he California Constitution sets a high standard for intrusion.'" *Esparza v. Gen Digital Inc.,* No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *5 (C.D. Cal. Jan. 16, 2024) (*quoting Williams v. DDR Media, LLC,* No. 22 CV-03789-SI, 2023 WL 5352896, at *6 (N.D. Cal. Aug. 18, 2023)); *see also Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that even disclosure of highly personal information such as social security numbers is not "highly offensive" enough to meet the "high bar for an invasion of privacy claim"); *Tanner v. Acushnet Co.,* No. 823CV00346HDVADSX, 2023 WL 8152104, at *7 (C.D. Cal. Nov. 20, 2023) ("**courts are less likely to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company.**"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). In dismissing plaintiff's invasion of privacy/intrusion upon seclusion claims, this Court held in *Kaiser* that:

> there are no allegations that Kaiser knew and/or approved of third parties collecting and/or using information for their own purposes (and not for the limited purpose of Kaiser's use). Therefore, the Court is presented with a situation where Kaiser simply hired a third party to do work for Kaiser's own benefit and with no showing that Kaiser did so in a way that materially increases the risk of dissemination of the collected information. Given the current allegations, it is not clear how that is highly offensive to a reasonable person[.]

*Id.*, WL 1589982, at *18. Here, based on the above cases, Plaintiff's claims fail because she merely alleges Bright Heart collected URL titles on the unauthenticated section of the Website. *See* Complaint, *generally*. Furthermore, Plaintiff fails to allege that Bright Heart knew and approved of third parties collecting and/or using Plaintiff's information **for the third parties' own purposes**. Plaintiff's claim also fails because "California's 'constitutional provision protecting the right of privacy ... does not confer on a litigant a private right of action for damages." *Cousin,* 2023 WL 8007350, at *4.

**K. Plaintiff's CLRA claim is legally deficient because she failed to provide statutory notice and such cause of action is only available to California residents**

The California Consumers Legal Remedies ACT ("CLRA") prohibits "unfair or deceptive acts or practices" in transactions for the sale or lease of goods or services to consumers. Cal. Civ. Code § 1770(a). Here, Plaintiff does not have standing to bring a CLRA claim because she is an Ohio citizen. *See Ehret,* 68 F. Supp. 3d 1121, 1130 ("Courts have assumed the presumption against extraterritoriality applies equally to the CLRA and… the Court finds no basis to hold otherwise") (*citing McKinnon,* 2013 WL 791457; *In re iPhone 4S Consumer Litig.,* No. C12–1127–CW, 2013 WL 3829653 (N.D.Cal. July 23, 2013)). Plaintiff's CLRA claim is also legally deficient because she fails to plead that she provided statutory notice to Bright Heart. *See* Complaint, at ¶¶362-369; *see also McKinnon,* 2013 WL 791457, at *6 ("Consumers bringing actions under CLRA provisions must give notice to the alleged offender at least thirty days prior to the commencement of an action for damages[.]"); *Heck v. Amazon.com, Inc.,* No. 2:23-CV-01219-JHC, 2024 WL 248712, at *4 (W.D. Wash. Jan. 23, 2024) ("The notice [must] be in writing and [must] be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of

business within California… Here, the notice letter does not meet the CLRA's statutory notice requirement because it does not cite the specific provisions of Section 1770 of the CLRA that Plaintiff alleges that Defendants violated.") Plaintiff's CLRA claim is also deficient because as explained above, akin to Plaintiff's UCL claim, "CLRA claims may only be brought by 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" and accordingly must "demonstrate some form of economic injury[.]" *Walgreen,* 2024 WL 2263395, at *17 (*quoting* Cal. Bus. & Prof. Code § 17204.). Here, Plaintiff alleges that Bright Heart violated the CLRA because "defendant failed to disclose it secretly shared, used, and allowed third parties to intercept Plaintiff's and Subclass Members' Private Information." *See* Complaint, at ¶ 366. However, Plaintiff's counsel made the same argument, verbatim, in *Eisenhower*, which the court rejected. Specifically, *Eisenhower* held that:

> Plaintiffs rely on a fraudulent omission theory of consumer fraud…Plaintiffs allege that 'Defendant failed to disclose it secretly shared, used, and allowed third parties to intercept Plaintiffs' and Subclass Members' Private Information.'… Defendant argues that Plaintiffs' 'vague allegations that [Defendant] allegedly made false representations' are insufficient to satisfy the pleading standard required by the CLRA… The Court agrees…Plaintiffs fail to sufficiently allege the underlying act that Defendant 'secretly shared, used, and allowed third parties to intercept.'…Without this, the Court finds that Plaintiffs CLRA claim fails.

*Id.,* 2024 WL 878100, at *8; *see also Desert Care*, 2024 WL 1343305, at *8 (dismissing plaintiff's CLRA claim because it failed to satisfy the heightened pleading requirement under Rule 9(b).

**L. Plaintiff's larceny and receipt of stolen property claim is legally deficient because there is no trespassory taking**

Here, as an initial matter and as explained above, Plaintiff's claims are time barred because Cal. Civ. Pro. § 335.1 provides for a two year statute of limitations. Additionally, as also explained above Plaintiff does not have standing to bring a larceny claim. *See Dfinity USA Rsch. LLC v. Bravick*, No. 22-CV-03732-EJD, 2023 WL 2717252, at *4 (N.D. Cal. Mar. 29, 2023) ("The Court can find no case applying this section of the Penal Code extraterritorially; nor would such an application make sense[.]").

California Penal Code § 496 makes it unlawful for a person to "buy[ ] or receive[ ] any property

that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or [to] conceal[ ], sell[ ], withhold[ ], or aid[ ] in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." *Id.* § 496 "defines the criminal offense of what is commonly referred to as receiving stolen property." *Line One Lab'ys Inc. (USA) v. Wingpow Int'l Ltd.,* No. CV 22-2401 FMO (EX), 2023 WL 6812760, at *10 (C.D. Cal. Sept. 12, 2023) (*quoting Siry Investments, L.P. v. Farkhondehpour,* 13 Cal.5th 333, 346 (2022)). Here, Plaintiffs larceny claim is legally deficient because larceny requires a trespassory taking. *See People v. Williams*, 57 Cal. 4th 776, 788 (2013); *Boegeman v. Smith*, No. 3:17-cv-00861, 2018 WL 3140469, at *9 (S.D. Cal. June 27, 2018). Pursuant to § 496 "the property in question must **already be stolen** before it is received, concealed, or withheld." *Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2022 WL 2119131, at *5 (N.D. Cal. June 13, 2022), reconsideration denied, No. 20-CV-04812-EJD, 2023 WL 3977633 (N.D. Cal. June 13, 2023). § 496 also contains an intent requirement which "prevents 'ordinary commercial defaults' from being transformed into a theft with 'mere proof of nonperformance or actual falsity.'" *Formic Ventures LLC v. SomaLogic, Inc.,* No. 23-CV-02660-VC, 2023 WL 6037899, at *1 (N.D. Cal. Sept. 15, 2023) (*quoting Siry,* 13 Cal. 5th 333, 362); *see also People v. Hartley*, 248 Cal. App. 4th 620, 627, 203 Cal. Rptr. 3d 770, 776 (2016) ("The need to prove fraudulent intent prevents '[o]rdinary commercial defaults' from being the subject of criminal prosecution'") In *Kaise*r, in dismissing plaintiff's larceny claim, this Court held that:

> even if the Court liberally construes the 'larceny' claim…it is not clear how there is theft if Kaiser only authorized third parties to collect information for Kaiser's benefit, and not for the third parties' own use… just as there is no unlawful interception, there is no 'theft' when Kaiser who has the authority to collect information, hires a third party to do its work, provided that information is assuredly not used for any other purposes. Further… there is no allegation in the FAC that Kaiser knew or approved of the use of member information by third parties for their benefit, as opposed to Kaiser's.

*Id.*, 2024 WL 1589982, at *26; *see also Eisenhower*, 2024 WL 878100, at *8 (dismissing plaintiff's larceny claim because "plaintiffs do not allege any specific facts related to stealing or theft of

information."); *Doe,* 2023 WL 5837443, at *15 (dismissing plaintiff's larceny claim because "plaintiffs have not clearly identified the specific representations that Meta made to them that support their larceny claim or the facts showing that their reliance on those representations is sufficient to state this claim.") Here, Plaintiff merely parrots the legal standard within § 496 , but fails to provide specific allegations that Bright Heart received stolen property, nor can she as any alleged personal information was received voluntary in return for consumer services provided by Bright Heart. *See* Complaint, at ¶¶ 370-379. Furthermore, to commit larceny, the personal information must have already been stolen before it was allegedly received by Bright Heart, which Plaintiff fails to allege. *See Id*. Plaintiff also wholly fails to allege criminal intent by Bright Heart. *See Id*.

**M. Plaintiff's breach of fiduciary claim is legally deficient because no fiduciary relationship existed**

A breach of fiduciary duty claim under California law requires proof of four elements: (1) the existence of a fiduciary relationship; (2) its breach; and (3) damages proximately caused by the breach. *O'Neal v. Stanislaus Cnty. Employees' Ret. Assn.,* 8 Cal. App. 5th 1184, 214 Cal. Rptr. 3d 591 (2017). A fiduciary relationship is " any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1338, 147 Cal. Rptr. 3d 772, 791 (2012). "Fiduciary relations arise out of certain canonical relationships that are legally defined and regulated." *Richelle L. v. Roman Cath. Archbishop*, 106 Cal. App. 4th 257, 271, 130 Cal. Rptr. 2d 601, 610 (2003), as modified (Mar. 17, 2003). Examples of a fiduciary relationship include a "guardian and ward, trustee and beneficiary, principal and agent, or attorney and client [.]" *Hudson v. Foster*, 68 Cal. App. 5th 640, 663, 283 Cal. Rptr. 3d 822, 839 (2021). "Fiduciary obligations generally come into play between two parties to a contract when one party's vulnerability is so substantial as to give rise to equitable concerns underlying the protection afforded by the law governing fiduciaries." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,* 43 Cal. 4th 375, 181 P.3d 142 (2008). Here, Plaintiff fails to plead the basic requirement to support her breach of fiduciary

duty claim, namely that a fiduciary relationship existed. Rather, Plaintiff alleges in a conclusory fashion that "a special relationship [existed] between Defendant and Plaintiff and Class Members, whereby Defendant became guardian of Plaintiff's and Class Members' Private Information." *See* Complaint, at ¶ 381. Notably however, Plaintiff fails to cite a single case for its conclusory and unsupported allegation. *See Id*., at ¶¶ 380-384. Plaintiff next alleges that "Defendant had a fiduciary duty to act for the benefits of Plaintiff and Class Members within the scope of Defendant'[s] relationship with its patients and former patients[.]" *Id.,* at ¶ 382. However such argument was dismissed in *Sharp*, where plaintiffs alleged that "as, a healthcare provider, Sharp has a fiduciary duty to its patients" and "Sharp breached [its fiduciary] duties…by installing…Meta Pixel on the appointment scheduling page and disclosing Plaintiffs'…sensitive health information without their consent to Meta." *Id.,* 681 F. Supp. 3d 1117, 1124. *Sharp* held that "there is no fiduciary relationship" and "the California Supreme Court has expressly held that a healthcare provider does not have a fiduciary relationship with patients[.]" *Id.,* (*citing Moore,* 51 Cal.3d 120, 271 Cal. Rptr. 146, 153, 793 P.2d 479; *Luiz,* 53 Cal. App. 2d 310, 313, 127 P.2d 966 ("the relationship of hospital and patient is not per se a fiduciary or confidential one.")). Accordingly, Plaintiff fails to sufficiently plead breach of fiduciary duty and her cause of action thereunder must be dismissed.

**N. Plaintiff's violation of the Ohio data breach statute claim is legally deficient because the statute does not contain a private right of action**

Ohio Revised Code § 1349.19(B)(1) provides that:

> Any person that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the system…if the access and acquisition by the unauthorized person causes or reasonably is believed will **cause a material risk of identity theft or other fraud to the resident.**

*Id*. Plaintiffs allege that Bright Heart Breach Ohio Revised Code § 1349.19(B) because Bright Heart "fail[ed] to timely disclose the Data Breach following discovery 'in the most expedient time possible but no later than forty-five days following its discovery or notification of the breach in the security of its systems[.]" See Complaint, at ¶ 385. Notably however, Plaintiff does not allege that Ohio

Revised Code § 1349.19 provides for a private right of action, not can she as the statute specifically provides only "**<u>the attorney general</u>** may conduct…an investigation and bring a civil action upon an alleged failure by a person to comply with the requirements of this section." Ohio Revised Code § 1349.19 (I). Furthermore, as explained above, Plaintiff fails to allege how URL titles can lead to a material risk of identity theft or other fraud.

### O. Plaintiff's violation of OCSPA claim is legally deficient because it fails to satisfy the "substantially similar" requirement

The Ohio Consumer Sales Practice Act ("OCSPA") prohibits "unfair or deceptive act or practice in connection with a consumer transaction." Ohio Revised Code § 1345.02, 1345.09. Here, as an initial matter and as explained above, Plaintiff's claim is time barred because Ohio Revised Code § 1345.10(C) provides for a two year statute of limitations. Furthermore, the statute of limitations is strictly construed. *See Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *10, n. 17 (N.D. Cal. June 28, 2017) (holding that "Ohio law does not allow tolling of the consumer protection statute" and "[t]he parties did not identify, and the Court did not locate, any case applying a fraudulent concealment theory to toll an [OCSPA] claim."); *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F.Supp.2d 545, 552 (N.D. Ohio 2006) ("Where a plaintiff seeks recovery of damages under the [O]CSPA, the limitations period is absolute, and the **<u>discovery rule does not apply</u>**") Even assuming Plaintiff's claim is not time barred (which it is), a consumer is entitled to bring a class action only if the alleged violation:

> was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code ...

*Foster v. Health Recovery Servs., Inc.,* 493 F. Supp. 3d 622, 637 (S.D. Ohio 2020); (*quoting* Ohio Revised Code § 1345.09(B)). "The plaintiff's complaint must allege that defendant's conduct was substantially similar to conduct that was either: (1) established as deceptive by an Ohio administrative

rule; or (2) found to be deceptive by an Ohio state Court decision." *Id.*, (*citing Phillips v. Philip Morris Companies Inc.*, 290 F.R.D. 476, 478 (N.D. Ohio 2013) ("The complaint contains no allegation that defendants engaged in conduct that was 'substantially similar' to conduct that was found deceptive by an Ohio administrative rule or an Ohio state court decision, as required by Section 1345.09(B)"); *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012) (noting "**a plaintiff must identify in his or her complaint the rule or case that satisfies Section 1345.09(B)'s notice requirement**."); *Terlesky v. Fifth Dimension, Inc.,* No. 1:15-CV-374, 2015 WL 7254189, at *3 (S.D. Ohio Nov. 17, 2015) ("A plaintiff bringing putative class claims under the OCSPA must therefore identify in her complaint the rule or case that satisfies the notice requirement under Ohio Rev. Code § 1345.09(B)… **If a plaintiff fails to do so, dismissal of the claim as a class action is proper**[.]") Here, Plaintiff fails to allege that Bright Heart's alleged conduct was substantially similar to conduct established as deceptive by an Ohio administrative rule or an Ohio state court decision. *See* Complaint, at ¶¶366-406. Furthermore, similar to the plaintiffs in *Foster*, which involved a data breach, Plaintiff here is unable to satisfy the requirements of Ohio Rev. Code § 1345.09(B).

## IV. THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO RULE 12(f) BECAUSE PLAINTIFF IS UNABLE TO MEET THE REQUIREMENTS OF RULE 23

A court "may strike from any pleading ... any redundant, immaterial, impertinent, or scandalous mater." Fed. R. Civ. P. 12(f). Furthermore, "under Rule 23(d), a court may 'require that the pleadings be amended to eliminate allegations about representation of absent persons.'" *Larry Pearl v. Coinbase Global, Inc.*, No. 22-CV-03561-MMC, 2024 WL 3416505, at *2 (N.D. Cal. July 15, 2024) (*quoting* Fed. R. Civ. P. 23(d)(1)(D)). "District courts have the authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified." *Id.* (*citing Kamm v. California City Dev. Co.,* 509 F.2d 205, 207 n.3, 212–14 (9th Cir. 1975) (affirming order striking class allegations where plaintiff would be unable to meet requirements of Rule 23)). Additionally, under Fed. R. Civ. P. 23(c)(1),

"as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." In order to maintain a class action, a plaintiff must satisfy each of the four requirements under Fed. R. Civ. P. 23(a), and must satisfy at least one of the prerequisites within Fed. R. Civ. P. 23(b). Here, as an initial matter, Plaintiffs are unable to certify a class because the class lacks Article III standing. "**Every class member must have Article III standing** in order to recover individual damages… 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion,* U.S. 413, 431 (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)). Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Id*. "That a suit may be a class action ... adds nothing to the question of standing[.]" *Spokeo v. Robins,* 578 U.S. 330, 338, n. 6 (2016) (citations omitted); *see also Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *3 (D. Ariz. Jan. 30, 2024) (dismissing class allegations in a data breach because the class lacked Article III standing").

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions ... would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). "Certification under Rule 23(b)(1)(A) is… not appropriate in an action for damages." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1180, 1193 (9th Cir.2001). Here, the primary relief sought is monetary damages as Plaintiff is requesting same within its Prayer for Relief and each of her thirteen causes of actions. As such, Plaintiff cannot certify a class under Rule 23(b)(1)(A). A class action is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id*. "Claims for individualized relief do not satisfy Rule 23(b)(2). "*Lyon v. United States Immigr. & Customs Enf't*, 300

F.R.D. 628, 642 (N.D. Cal. 2014) (citations omitted). The advisory committee's notes to Rule 23(b)(2) state the rule is not appropriate for all cases and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 39 F.R.D. 69, 102 (1966). Here, Plaintiff will be unable to satisfy Rule 23(b)(2) because, as explained above, the primary relief sought is damages. Furthermore, each claim for relief is individualized because each class member will need to prove it is a patient and visited the Website. Furthermore, Plaintiff alleges each class member had different personal information allegedly compromised, including their "unique 'FID' value." *See* Complaint, at ¶¶ 14, 21, 22, 26, 27, 29, 99, 109, 115, 131, 140, 142, 143, 272, 315. As such, each class members will need to provide individual proof of "what information on their Facebook pages, if any, was viewable and could be used to identify them", and provide whether their Facebook page is private or public. *See Heerde v. Learfield Commc'ns, LLC,* No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing class action complaint because plaintiff failed to allege his and the classes' Facebook ID contained personally identifiable information). As such, each class member's alleged damages are not capable of computation by means of an objective standard, and required individualized proof.

Pursuant to Rule 23(b)(3), a court may certify a class only if it first determines that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Id*. When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir). Courts must therefore separate the issues subject to "generalized proof" from those subject to "individualized proof" to determine whether plaintiffs have satisfied the predominance requirement. *AdTrader, Inc. v. Google LLC,* No. 17-CV-

07082-BLF, 2020 WL 1922579, at *15 (N.D. Cal. Mar. 24, 2020). Where an individualized causation issue would predominate over a case, courts have denied class certification. *Poulos v. Caesars World, Inc*., 379 F.3d 654, 658 (9th Cir. 2004); *Tourgeman v. Collins Fin. Servs., Inc*., No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *16 (S.D. Cal. Oct. 21, 2011). The presence of class members who suffered no injury at all may defeat predominance. *Ngethpharat v. State Farm Mut. Ins. Co*., 339 F.R.D. 154, 169 (W.D. Wash. 2021). Here, as explained above generalized proof could not resolve a significant aspect of the case in a single adjudication; rather, individual proof is required. Because, as Plaintiff admits, the circumstances of each class member is "unique", it would be practically impossible that the outcome as to the class would be consistent with that of the cases if adjudicated individually.

## V. THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO 12(B)(3) BECAUSE A VALID AND ENFORCEABLE ARBITRATION AGREEMENT EXISTS

### A. The Terms of Use contains an Arbitration Agreement

Bright Heart's Term of Use governs a user's access to and use of the Website ("Terms of Use"). *See* Declaration of Jonathan Ciampi, at ¶ 6., Ex A. At all times since Plaintiff began using the Website on or around March 2022, Bright Heart's Term of Use included an Arbitration Agreement, which provides, in part:

> These Terms of Use and your use of the Site shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws. **Any dispute** arising under or relating in any way to these Terms of Use will be resolved **exclusively by final and binding arbitration** in San Francisco, California **under the rules of the American Arbitration Association**,[.]

(the "Arbitration Agreement"). *See id.,* at ¶ 11., Ex A. At all times since Plaintiff began using the Website on or around March 2022, Bright Heart's Term of Use included an attestation clause, which provides, in part:

> You[] understand that by checking the “agree” box for these Terms of Use and/or any other forms presented to you on the Site you are agreeing to these Terms of Use and that such action constitutes a legal signature[.]

(the "Attestation Clause"). *See id*., at ¶ 12., Ex A. At all times since Plaintiff allegedly began using the Website on or around March 2022, Bright Heart's Terms of Use provided:

> By accessing and using the Site, you agree to be bound by these Terms of Use and all other terms and policies that appear on the Site. If you do not wish to be bound by any of these Terms of Use, you may not use the Site or the Services.

*See id*., at ¶ 13. At all times since Plaintiff began using the Website on or around March 2022, Bright Heart required a client, including Plaintiff, to complete, sign and accept the terms and conditions of the Informed Consent Form (the "Informed Consent Form"). *See id*., at ¶ 14., Ex. D. At all times since Plaintiff allegedly began using the Website on or around March 2022, the Informed Consent Form notified a client that Bright Heart's website "contains more detailed information about [Bright Heart's] services and philosophy." *See id*., at ¶ 15., Ex. D. At all times since Plaintiff allegedly began using the Website on or around March 2022, the Informed Consent Form requested a client to "review [Bright Heart's] Patient Rights policy at www.brighthearthealth.com." *See id*., at ¶ 16., Ex. D. By becoming a client of Bright Heart, Plaintiff completed and signed the Informed Consent Form, and therefore agreed and accepted the terms and conditions within same, including the provision requesting her to read the Patient Right policy located on the Website. *See id*., at ¶ 18., Ex. D

**B. The Terms of Use is valid and enforceable**

Under California Law, "contracts formed on the Internet fall on a spectrum. At one end are 'clickwrap' agreements, in which a website presents users with specified contractual terms and users must check a box explicitly stating 'I agree' in order to proceed." *Quamina v. JustAnswer LLC,* No. 22-CV-06051-JD, 2024 WL 950157, at *4 (N.D. Cal. Mar. 5, 2024) (*quoting Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 513 (9th Cir. 2023)). "At the other end of the spectrum" from clickwrap agreements "are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* "Because no affirmative action is required by the website user to agree to the terms of a

contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the **user has actual or constructive knowledge of a website's terms and conditions**." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1176 (9th Cir. 2014) (internal citations omitted). "In between are so called 'sign-in-wrap' agreements that notify the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advise the user that he or she is agreeing to the terms of service when registering or signing up.'" *Quamina,* 2024 WL 950157, at *4 *(quoting Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017) (analyzing California Law). For agreements that fall between a clickwrap and a browsewrap agreement, "a valid internet contract is formed if the user received 'reasonably conspicuous notice' of the agreement and exhibited 'an unambiguous manifestation of assent.'" *Id (quoting Oberstein,* 60 F.4th 505, 514).

If a user does not have actual knowledge of the browsewrap agreement or sign-in-wrap agreement, the validity of the agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 29 (2d Cir.2002) (applying California law); *see also In re Zappos.com, Inc. Customer Data Sec. Breach Litig*., 893 F.Supp.2d 1058, 1064 (D.Nev.2012). Whether a user has inquiry notice in turn depends on the design and content of the website and the agreement's webpage. *Be In, Inc. v. Google Inc.,* 2013 WL 5568706, at *6 (N.D. Cal., Oct. 9, 2013, No. 12-CV-03373-LHK). Where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements. See, e.g., *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04–04825, 2005 WL 756610, at *2, 4–5 (N.D.Cal. Apr. 1, 2005) "In short, the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Nguyen,* 763 F.3d 1171, 1177. Here, Plaintiff had actual and constructive knowledge of Bright Heart's Terms of Use. First, Plaintiff cites to Bright Heart's Privacy Policy

throughout her Complaint (emphasis added). *See* Complaint, at ¶¶ 35, 157, 158, 236, 298, 346, 356; *see also* fn 40. Not only does Bright Heart's Terms of Use incorporate by reference its Privacy Policy, but at all times since Plaintiff began using the Website on our around March 2022, the Terms of Use has been listed directly below its Privacy Policy, as illustrated below:




*See* Declaration of Jonathan Ciampi, at ¶ 9, Ex. C. Additionally, by completing and signing the Informed Consent Form, Plaintiff acknowledged that she reviewed Bright Heart's Patient Right's policy, which, at all times since Plaintiff allegedly began using the Website on or around March 2022, was located direct below the Privacy Policy and Terms of Use, as illustrated above. *See id.,* at ¶ 17, Ex. C. Accordingly, there can be no doubt Plaintiff had actual and constructive knowledge of the Terms of Use as it was located immediately next to the Privacy Policy and Patient Right's Policy. Furthermore, as explained above, the Terms of Use Attestation Clause contains an explicit textual notice that continued use of the Website acts as a manifestation of the user's intent to be bound, and Plaintiff may not use the Website if she did not agree to be bound by the Terms of Use. *See id.,* at ¶¶ 12-13, Ex. A.

**C. The Arbitration Agreement is governed by the FAA**

As Bright Heart's Terms of Use includes an Arbitration Agreement, the Federal Arbitration Act ("FAA") applies. "The U.S. Supreme Court has held that, through the FAA, 'Congress declared a national policy favoring arbitration.'" *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*

*Reynolds, Inc. v. Byrd,* 470 U.S. 213, 214 (1985). Pursuant to Section 2 of the FAA, a written provision evidencing a transaction "involving commerce" to settle by arbitration a controversy thereafter arising out of such transaction shall be valid, irrevocable, and enforceable. 9 U.S.C. § 2. As the U.S. Supreme Court has made clear, the "involving commerce" language within Section 2 of the FAA is broad, and does not mean "in commerce" but rather "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-274 (1995). "In Commerce" includes "the generation of goods and services for interstate markets and their transport and distribution to the consumer." *Id*., at 273. Furthermore, pursuant to Section 4 of the FAA, " a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. Here, Bright Heart's Website involves commerce and the FAA applies because it allows individuals to obtain telemedicine services. *See* Complaint, at ¶ 1; *see also United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate commerce.").

**D. The Arbitration Agreement encompasses Plaintiff's claims**

Here, as, explained, *supra*, there can be no doubt that all of Plaintiff's claims giving rise to this suit encompasses the Arbitration Agreement because it covers "any dispute." Furthermore, any questions of arbitrability must be delegated for the arbitrator to decide because the Arbitration Agreement incorporates the AAA Streamlined Arbitration Rules & Procedures. *See Brennan v. Opus Bank,* 796 F.3d 1125, 1130-32 (9th Cir. 2015) (holding that incorporation of AAA rules constituted clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *White v. Ring LLC*, No. 22-cv-6909, 2023 WL 1097554, at *6 (C.D. Cal. Jan. 25, 2023) (same); *Rebecka Miller v. Plex,*

*Inc.*, Case No. 5:22-cv-5015-SVK, ECF No. 32 (N.D. Cal. March 30, 2023) (same). Accordingly, given that the Arbitration Agreement covers all of Plaintiff's claim, including questions of arbitrability, this matter should be dismissed and be sent to arbitration. *See Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806-LHK, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011) ("Where an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action."); *Thinkey Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (same); *Castaldi v. Signature Retail Servs., Inc.,* No. 15-CV-00737-JSC, 2016 WL 7042991, at *1 (N.D. Cal. Jan. 20, 2016) (same) (listing cases)

## VI. CONCLUSION

WHEREFORE, Bright Heart respectfully moves pursuant to Fed. R. Civ. Pro. 12(b)(6) for an order dismissing this matter; or alternatively pursuant to Fed. R. Civ. Pro. 12(f) for an order striking Plaintiff's class allegations; or alternatively pursuant Fed. R. Civ. Pro. 12(3) and 9 U.S.C. § 4 for an order compelling arbitration of all of the claims brought by Plaintiff against Bright Heart in this action. Bright Heart seeks such further relief as appears lawful, equitable, and just.

DATED: August 15, 2024

**MURPHY, PEARSON, BRADLEY & FEENEY**

*/s/ Christopher R. Ulrich*
Christopher R. Ulrich
John P. Girarde
Aaron K. McClellan

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ Jacob P. Wilson*
Jacob P. Wilson
Christopher J. Seusing
*Pro Hac Vice*

.

Attorneys for Bright Heart Health Inc. d/b/a Bright Heart Health

WOOD, SMITH, HENNING & BERMAN LLP
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310.481.7600 ♦ FAX 310.481.7650

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of August, 2024, I electronically filed the foregoing **DEFENDANT BRIGHT HEART HEALTH, INC.'S NOTICE OF MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION; AND MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| John R. Parker, Jr., Esq.<br>Matthew J. Langley, Esq.<br>**Almeida Law Group, LLC**<br>3550 Watt Avenue, Ste. 140<br>Sacramento, CA 95608<br>Tel: (916) 616-2936<br>jrparker@almeidalawgroup.com<br>matt@almeidalawgroup.com | ***Attorneys for Plaintiff, S.N., and Proposed Class*** |
| Nicholas Migliaccio, Esq. (pro hac vice anticipated)<br>Jason Rathod, Esq. (pro hac vice anticipated)<br>Bryan G. Faubus, Esq. (pro hac vice anticipated)<br>**Migliaccio & Rathod LLP**<br>412 H. Street NE<br>Washington, DC 20002<br>Tel: (202) 470-3520<br>Fax: (202) 800-2730<br>nmigliaccio@classlawdc.com<br>jrathod@classlawdc.com<br>bfaubus@classlawdc.com | ***Attorneys for Plaintiff, S.N., and Proposed Class*** |

*/s/ Teresa Cabanday*
Teresa Cabanday